IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CALVIN HAMPTON                                                                                          PLAINTIFF

VS.                                                                                                    No. 1:04cv259-D-D

OKTIBBEHA COUNTY SHERIFFS DEPARTMENT, et. al.                              DEFENDANTS

OPINION DENYING MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Defendants Oktibbeha County Sheriffs Department, Sheriff Dolph Bryan, James Lindsey, Sam Gitchell, and Tommy Whitfield's combined motion for summary judgment. Upon due consideration, the Court finds that the motion shall be denied.

A. Factual History

On April 29, 2002, Plaintiff was arrested by the Oktibbeha County Sheriff's Department for resisting arrest of another. Plaintiff was a certified teacher employed at the Quad County Alternative School operated by the Starkville School District. On the date in question, Deputy Samuel Gitchell of the Oktibbeha County Sheriff's Department arrived at the Quad County Alternative School to lawfully arrest a juvenile, Quentin Mathis. Deputy Gitchell informed the Plaintiff of his intention to arrest Mathis and asked the Plaintiff to retrieve Mathis. The Plaintiff objected to the arrest on school grounds without seeing the warrant. Juvenile warrants are normally sealed, and Deputy Gitchell refused to allow Plaintiff to see the warrant. After an agitated exchange, Deputy Gitchell finally acquiesced because school was about to dismiss for the day. The Plaintiff then had school personnel retrieve Mathis and Gitchell took him into custody.

After a discussion with his superiors, Gitchell and Deputy Tommy Whitfield returned to

the Quad County Alternative School and arrested the Plaintiff for resisting arrest of another.  The Plaintiff's criminal case was originally dismissed by Justice Court judge Bernard Crump.  Crump then set aside the dismissal and recused himself.  Other judges also recused themselves in a prosecution that lasted more than two years.  The case then fell into the hands of Oktibbeha County Circuit Judge Lee J. Howard.  Judge Howard assigned the case to Municipal Court Judge William Eshee.  The Plaintiff disagreed with this assignment and moved for reconsideration.  That request was denied and Plaintiff was subsequently convicted of resisting arrest.  The Plaintiff appealed to the Oktibbeha County Circuit Court.  That court issued a directed verdict in favor of the Plaintiff.

The Plaintiff filed this action under 42 U.S.C. §§ 1983, 1985 asserting that the Defendants acted under color of state law to deprive the Plaintiff of his rights and privileges protected by the Fourth and Fourteenth Amendments.  Specifically, the Plaintiff alleged that the Defendants engaged in false arrest and malicious prosecution.  The Defendants now move this Court to grant them summary judgment stating that Plaintiff cannot meet the burden of any of his claims.  The Defendants allege that when an independent intermediary signs a warrant the chain of causation is broken for false arrest; thus, insulating the police officers from suit.  In addition, Defendants state that the Fifth Circuit no longer recognizes a claim for malicious prosecution under § 1983 and that the Plaintiff failed to specifically allege a claim of malicious prosecution under state law.  The Defendants further state that Plaintiff cannot prove any type of County policy that caused the Plaintiff to suffer his alleged constitutional deprivation.  The Defendants also state that Plaintiff cannot allege a violation of his constitutional rights.  Finally, the Defendants state that the officers in their individual capacities are clothed by the qualified immunity doctrine.  The Plaintiff objects to summary judgment on all grounds citing various

issues of factual discrepancy and other legal arguments.

### B. Standard of Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case" Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56© mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

### C. Discussion

As to the Defendants' motion for summary judgment as it relates to all claims except qualified immunity, the Court finds that genuine issues of material fact exist, and that the

Defendants have failed to show that they are entitled to judgment as a matter of law. Further, the court has the discretion, which it exercises here, to deny the Defendants' motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest . . . that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.")

Qualified Immunity

In ruling on a defendant's claim of qualified immunity, the court first must determine whether the plaintiff has alleged the violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 230, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991). Then, the court must determine whether the officer's actions were objectively reasonable under settled law in the circumstances with which he was confronted. Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991); See Pfannstiel v. Marion, 918 F.2d 1178, 1183 (5th Cir. 1990) (If "reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.").

In the case *sub judice*, the Plaintiff has alleged the violation of clearly established constitutional rights - including his rights of protection against unlawful seizure, malicious prosecution and false arrest. The Court is satisfied that the Plaintiff has alleged violations of the Fourth and Fourteenth Amendments. Thus, the court must now determine whether the Defendants' actions were objectively reasonable. The court considers each Defendant's actions in turn.

The Court first notes that the parties' versions of the facts differ greatly. This complicates the issue because the parties disagree on which Defendants participated in the events and whether their actions were objectively reasonable. In light of this, the Court must cast an eye in favor of the non-moving party in performing its qualified immunity analysis. The following legal analysis

applies to all Defendants and the Court's analysis of the merit of their qualified immunity argument.

> Upon request, the parent, guardian or custodian of the child who is the subject of a youth court cause or any attorney for such parent, guardian or custodian, shall have the right to inspect any record, report or investigation which is to be considered by the youth court at a hearing . . .

Miss. Code Ann. § 43-21-261(3) (1972).

It is settled United States Supreme Court precedent that public schools and school authorities act *in loco parentis*. Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 684, 106 S. Ct. 3159, 3165, 92 L. Ed. 2d 549 (1986). Schools have the power and the duty to "inculcate the habits and manners of civility." Id. at 681, 106 S. Ct. at 3163. In New Jersey v. T.L.O., the Supreme Court found that public schools not only exercise parental power over their students, but also a custodial and tutelary power, permitting a degree of supervision and control that could not be exercised over free adults. 469 U.S. 325, 336-39, 105 S. Ct. 733, 740-41, 83 L. Ed. 2d 720 (1985). "[A] proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." Id. at 339, 105 S. Ct. at 741.

In the case *sub judice*, the Plaintiff in his role as director or principal was acting *in loco parentis* for Quentin Mathis. In his deposition, the Superintendent stated that it is school policy not to release students without proper documentation, even to law enforcement officials. In addition, common sense dictates that schools are the protectors of students during school hours. The school must be careful with whom they allow students to leave their custody. In most public schools, a parent is required to sign a document to take custody of their children from school officials. The subject school was an alternative school which demands even tighter security parameters for school officials. In light of school's status, the safeguards for the release of students are of the highest

importance. Therefore, the Court finds that the average person and especially police officers should know that documentation will be required to extract a student from school custody. The Court also finds that since the school acts *in loco parentis*, then a senior school official, such as the Plaintiff, can request to see a warrant before releasing a student to law enforcement officials.

Finally, the Court must look at the definition of resisting arrest. "It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the arrest of another by any state, local, or federal law enforcement officer." Miss. Code Ann. § 97-9-73 (1972). The Court finds that the Plaintiff did not resist the arrest of Quentin Mathis. In fact, the Plaintiff was acquitted of this charge. The Court notes that Plaintiff objected to the arrest without seeing the warrant because he was protecting a student in his custodial protection. Once shown the warrant, the Plaintiff acted reasonably and complied.

First, as to the Defendant Deputy Sam Gitchell, he played the primary role in this unfortunate incident. Plaintiff sued Gitchell in both his individual and official capacities. He is entitled to qualified immunity in his individual capacity if his actions regarding this incident were objectively reasonable. In light of the Plaintiff's averments, the Court finds that there is a factual issue as to whether Defendant acted reasonably, and a factual issue exists that would defeat summary judgment.

Second, as to the Defendant Deputy Tommy Whitfield, the Plaintiff alleges that he acted with the others in concocting the resisting arrest story and then was ultimately a part of the arrest party. Because of the parties differing versions, the Court is unable to ascertain the nature of Whitfield's role. In light of the Plaintiff's averments, the Court finds that there is a factual issue as to whether Defendant acted reasonably, and a factual issue exists that would defeat summary judgment.

Third, as to the Defendant Sheriff Dolph Bryan, the Plaintiff sued this Defendant in both his individual and official capacities. The Plaintiff alleges that the Sheriff told Deputy Mitchell to sign

an affidavit and proceed with the arrest of the Plaintiff. In light of the Plaintiff's averments, the Court finds that there is a factual issue as to whether Defendant acted reasonably, and a factual issue exists that would defeat summary judgment.

Finally, as to the Defendant Supervisor James Lindsey, the Plaintiff sued Lindsey in both his individual and official capacities. The Plaintiff alleges that this Defendant was a part of the decision to arrest him. Once again the vastly different factual scenarios create a quandary for the Court. In light of the Plaintiff's averments, the Court finds that there is a factual issue as to whether Defendant acted reasonably, and a factual issue exists that would defeat summary judgment.

### D. Conclusion

Upon due consideration of the facts, the Court finds that genuine issues of material fact exist in this case and will deny the Defendants' motion for summary judgment. In addition, the Court finds that there are factual issues as to whether the individual Defendants acted reasonably, and a factual issues exist whether the Defendants are entitled to qualified immunity.

A separate order in accordance with this opinion shall issue this day.

This the 2nd day of February 2006.

/s/ Glen H. Davidson
Chief Judge